IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE: §
§ MISCELLANEOUS NO. H-19-2011
ATTORNEY ROBERT W. BERLETH §

## MEMORANDUM OPINION AND ORDER

### I. Background

Robert W. Berleth was licensed to practice law in Texas on May 1, 2017, and he was admitted to the Southern District of Texas on May 5, 2017.[1] Berleth's practice involves debt collection and consumer bankruptcy, and he has offices in Houston, Texas, and Helena, Montana.[2]

In January of 2019 Berleth appeared as attorney of record in two bankruptcy cases before Judge Marvin Isgur and a third before

---

[1] Texas Attorney Profile, State Bar of Texas, available at https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/Customsource/MemberDirectory/MemberDirectoryDetail.cfm&ContactID=339245 (last accessed January 16, 2020); In re Attorney Admissions, Case No. H-17-MC-1154.

[2] Oral Deposition of Robert Berleth, Case No. H-19-MP-302 (Synergy), Exhibit A at May 23 Show Cause Hearing, Docket Entry No. 27A, p. 40. The transcript of Berleth's deposition was not filed in H-19-MP-302, but it was admitted as an exhibit and incorporated into the record of the instant case at Berleth's January 14, 2020, disciplinary hearing. It was referred to at the hearing, and will be referred to in this opinion, as Docket Entry No. 27A in the Synergy case.

Judge Jeff Norman.[3]  In each case the petitioner was either referred to Berleth by Synergy Law LLC ("Synergy") or Synergy was otherwise involved in preparing the debtor's petition.[4]

Around the same time, Berleth represented Synergy in settlement negotiations with a former Synergy client, Sean Cavness, who had threatened to bring an adversary proceeding against Synergy related to its handling of Cavness's bankruptcy case, also assigned to Judge Isgur.[5]

In the course of these proceedings, allegations arose that Berleth had offered to refer cases to Cavness's lawyer, Charles Newton, if Newton would agree to settle the proposed adversary proceeding for less than previously agreed.[6]

Details of the underlying dispute between Cavness and Synergy, and its ultimate resolution, as well as the allegations against

---

[3]See In re Afaf Ali Ahmad, Case No. H-18-BK-37392; In re Darian Butler, Case No. H-19-BK-30007; In re Leonel Botello, Case No. H-19-BK-30032.

[4]Id.

[5]Id.

[6]See Objection to Agreed Judgment Sanctioning Synergy ("Cavness Objection"), Case No. H-19-MP-302 (Synergy), Docket Entry No. 6, ¶ 40.  Berleth also shared his CM/ECF credentials with Synergy, and non-lawyer staff at Synergy used those credentials to file bankruptcy petitions on behalf of Synergy clients.  Agreed Order Sanctioning Robert W. Berleth, Case No. H-19-BK-30007 (Butler), Docket Entry No. 70.  Berleth was sanctioned for that conduct, and the issue is not presently before the court.

Berleth, and the events that led to this referral, are documented in the five cases assigned to Judge Isgur.[7]

## A. Synergy Law Operations

Synergy Law LLC, which appears to have been based in Virginia and Washington, DC, offered loan modification, foreclosure defense, and bankruptcy filing services to clients throughout the country.[8] As recently as March of 2019, Synergy advertised itself as "an experienced full service law firm," with "an extensive and experienced nationwide network of attorneys."[9]

When a potential client contacted Synergy, the company's non-lawyer staff in Virginia would advise the client about various options, including bankruptcy.[10] If the client elected to file for bankruptcy, Synergy's non-lawyer staff would prepare the client's bankruptcy petition using automated software, and Synergy would then forward the petition to an "Of Counsel" attorney in the state where the petition would be filed.[11]

---

[7] See id. It was also determined that Berleth shared his CM/ECF credentials with Synergy, and that non-lawyer staff at Synergy used those credentials to file bankruptcy petitions on behalf of Synergy clients. Agreed Order Sanctioning Robert W. Berleth, Case No. H-19-BK-30007 (Butler), Docket Entry No. 70. Berleth was sanctioned for that conduct, and the issue is not presently before the court.

[8] Id.

[9] Exhibit CAV-1 to Cavness Objection, Case No. H-19-MP-302 (Synergy), Docket Entry No. 6-1, p. 1.

[10] Id.

[11] Id.

It appears that clients would not necessarily provide a "wet ink" signature on the original petition prior to electronic filing, and in certain cases the "Of Counsel" attorneys shared their CM/ECF login credentials with Synergy's non-lawyer staff, who themselves filed the petitions.[12]

## B. Scott Marinelli

Synergy's former managing partner, Scott Marinelli, was reportedly suspended from the practice of law in New Jersey in 2017, as well as in DC in May of 2018.[13] In June of 2018 Marinelli was charged criminally for fraud and theft related to various real estate transactions in Pennsylvania.[14] After June of 2018 Marinelli was removed from the managing partner role at Synergy and appointed as COO, until early December of 2018, when he appears to have been terminated.[15]

---

[12]Id. at 25, 28.

[13]Original Complaint Concerning Violation of Restrictions on Debt Relief Agencies; Failure to Properly Provide Bankruptcy Disclosures Information; the Violation of F.R. Bankr. P. 9011; Violation of the Automatic Stay; and, Related Relief ("Cavness Adversary Complaint"), Case No. C-19-AP-2012 (Cavness AP), Docket Entry No. 1, ¶¶ 19, 25; see also Testimony of Terrylle Blackstone, Case No. H-19-BK-30007 (Butler), Docket Entry No. 58, pp. 9, 19 (stating that Synergy learned in or about June of 2018 that Marinelli lost his law license).

[14]Exhibit CAV-2 to Cavness Objection, Case No. H-19-MP-302 (Synergy), Docket Entry No. 6-2.

[15]Testimony of Terrylle Blackstone, Case No. H-19-BK-30007 (Butler), Docket Entry No. 58, p. 9.

## C.  Berleth's Work for Synergy

According to Berleth, Scott Marinelli contacted him in mid- to late-September of 2018 and informed him that Synergy was facing approximately $150,000 in sanctions in Montana.[16]  Synergy retained Berleth, and he was able to reach a favorable settlement for Synergy.[17]

Berleth also agreed to be an "appearance counsel" for Synergy in connection with certain bankruptcy cases filed on behalf of Synergy clients.[18]  According to an Agreed Order filed in the bankruptcy court:

> On October 10, 2018, Berleth & Associates and Synergy Law entered into an agreement whereby Berleth & Associates would provide bankruptcy assistance.  Synergy Law is not a member, partner, or regular associate of Berleth & Associates.  Pursuant to the agreement, Synergy Law would collect the fees from clients and prepare the paperwork, and then would pay Berleth & Associates in accordance with their agreement.[19]

According to Berleth, sometime between Thanksgiving and Christmas of 2018 Synergy approached him about doing additional work for

---

[16]Berleth Deposition, Case No. H-19-MP-302 (Synergy), Docket Entry No. 27A, pp. 50, 53.

[17]Id. at 15-16.

[18]Id. at 52-53.

[19]Agreed Order Sanctioning Robert W. Berleth, Case No. H-19-BK-30007 (Butler), Docket Entry No. 70, ¶ 8.  After entering into the October 10, 2018, agreement, Berleth does not appear to have been associated with any bankruptcy petitions filed in the Southern District of Texas until December 31, 2018.  See In re Afaf Ali Ahmad, Case No. H-18-BK-37392.

Synergy in Texas.[20]  Synergy flew Berleth and his wife to Washington, DC, and Berleth met with Marinelli.[21] After the meeting Berleth agreed to assist Synergy with a threatened legal action against it by former Synergy client Sean Cavness and Cavness's lawyer, Charles Newton.[22]

## D.  Sean Cavness Case

In June of 2018 Cavness, who lives in Kingsville, Texas, was facing foreclosure.  He contacted Synergy regarding modification of his home loan.[23]  Cavness signed an engagement letter with Synergy that identified Scott Marinelli as the attorney in charge and referenced various "Counsel Attorneys" in the states in which Synergy operated — including two attorneys in Houston.[24]  Berleth does not appear to have been listed in the agreement.

According to Cavness, Synergy sent him forms he would need to file for bankruptcy and instructed him, over the phone, how to complete the forms.[25]  Synergy instructed him to file the forms, but not to disclose that Synergy had assisted him, not to attend the

---

[20]Berleth Deposition, Case No. H-19-MP-302 (Synergy), Docket Entry No. 27A, p. 72.

[21]Id. at 72-73.

[22]Id. at 73.

[23]Statement of Financial Affairs, Case No. C-18-BK-20425 (Cavness BK2), Docket Entry No. 9, p. 6.

[24]See Cavness Adversary Complaint, Case No. C-19-AP-2012 (Cavness AP), Docket Entry No. 1, ¶ 7.

[25]Id. ¶¶ 11, 33.

meeting of creditors, not to complete the required paperwork, and to disregard any mail he received from the court.[26] The sole purpose of filing was to temporarily stop the foreclosure of his home.[27]

On June 29, 2018, Cavness filed a <u>pro se</u> Chapter 13 petition, initiating Case No. C-18-BK-20275, which was assigned to Judge Isgur. Cavness failed to appear at his meeting of creditors.[28] He also failed to appear at an August 15 hearing.[29] The court dismissed Cavness's Chapter 13 case and issued an order barring Cavness from future bankruptcy filings for 180 days.[30]

On September 26, 2018, Cavness filed another bankruptcy petition, this time with counsel, initiating case No. C-18-BK-20425, which was also assigned to Judge Isgur. Cavness did not identify Synergy Law in his Statement of Financial Affairs, which asked whether Cavness had paid anyone in the last year in connection with preparing a bankruptcy petition.[31] The following day Judge Isgur entered an order directing Cavness to appear and

---

[26]<u>Id.</u> ¶¶ 11, 33.

[27]<u>Id.</u> ¶ 6.

[28]Show Cause Order, Case No. C-18-BK-20425 (Cavness BK2), Docket Entry No. 8.

[29]<u>Id.</u>

[30]Order Dismissing Case, Case No. C-18-BK-20275 (Cavness BK1), Docket Entry No. 20.

[31]<u>See</u> Voluntary Petition, Case No. C-18-BK-20425 (Cavness BK2), Docket Entry No. 1, p. 47.

show cause why he should not be held in contempt for violating the August 15 order.[32]

On October 17, 2018, Judge Isgur held a show cause hearing.[33] Based on testimony at the hearing, the court removed the prejudice in its prior order and allowed Cavness's new case to proceed.[34] The court also appears to have instructed Cavness and his counsel to conduct an inquiry into whether enough evidentiary support existed to file a cause of action against Synergy Law, and potentially others, for violation of the debt relief agency and other bankruptcy provisions and rules.[35] The court directed Cavness to file a status report by November 1.[36]

On November 1, 2018, attorney Charles Newton filed a status report on behalf of Cavness, stating that (1) Newton's investigation revealed that Cavness had paid Synergy Law $2,550 in connection with his prior bankruptcy petition, and (2) there was reason to believe that Synergy misrepresented its services, committed malpractice, and that Synergy violated various provisions

---

[32]Order to Show Cause, Case No. C-18-BK-20425 (Cavness BK2), Docket Entry No. 8, p. 1.

[33]See Courtroom Minutes, Case No. C-18-BK-20425 (Cavness BK2).

[34]See id.; Status Report on Rule 11 Inquiry as to Evidentiary Support for Filing a Cause of Action Against Synergy Law, LLC and Others ("Status Report"), Case No. C-18-BK-20425 (Cavness BK2), Docket Entry No. 35.

[35]See id. at 1.

[36]Courtroom Minutes, Case No. C-18-BK-20425 (Cavness BK2).

of 11 U.S.C. §§ 526-528, as well as the Federal Rules of Bankruptcy Procedure.[37] Newton proposed filing an adversary proceeding on behalf of Cavness to pursue those causes of action.[38] In "an attempt to mitigate," Newton proposed to first provide a copy of the status report to Synergy to "ascertain the possibility of a settlement resolution."[39] Newton also advised the court that "[s]hould a settlement or resolution result without the need to file an adversary proceeding, Mr. Cavness will file and circulate a motion for approval pursuant to F. R. Bankr. P. 9019."[40]

On November 9, 2018, Cavness filed an Application to Employ Charles Newton & Associates "to represent [Cavness] in analyzing and prosecuting an adversary proceeding against third parties, Synergy Law, LLC, and possibly its lawyers and affiliated companies."[41] Cavness reported that he had negotiated a contingency fee arrangement with Newton "that requires payment of hourly sums, in addition to expenses and costs, as approved by the Court, from any funds or sums awarded and recovered."[42] The fee agreement states: "We will not seek to collect our fees and expenses against

---

[37]Status Report, Case No. C-18-BK-20425 (Cavness BK2), pp. 10-12.

[38]Id. ¶ 15.

[39]Id.

[40]Id. ¶ 16.

[41]Application to Employ Charles Newton & Associates as Special Counsel Pursuant to 11 U.S.C. § 328(a) ("Application to Employ"), Case No. C-18-BK-20425 (Cavness BK2), Docket Entry No. 40, ¶ 1.

[42]Id. ¶ 9.

you but will strive to collect the fees and costs you incur from the violators."[43]

On December 5, 2018, Judge Isgur granted the Application to Employ Charles Newton.[44]

## E. Settlement Negotiations With Marinelli and Berleth

On December 11, 2018, Newton emailed Scott Marinelli at Synergy, referencing and rejecting a December 7 offer from Synergy to settle the Cavness dispute for $10,000.[45] Newton wrote: "We do not agree with your opinions concerning this case and your belief that this is a 'shakedown'. Synergy seems to have identical trouble across the Country."[46] Newton offered to settle the case for $15,000, based on the $2,550 Cavness paid to Synergy, Cavness's $310 filing fee in the first bankruptcy, an anticipated court sanction against Synergy of at least $1,500, and anticipated attorneys' fees to Newton of $10,000.[47]

On December 14, 2018, Marinelli accepted Cavness's offer to settle for $15,000, with a change in the dates of payment.[48] According to Newton, he and Marinelli spoke by phone on

---

[43]Engagement Letter, Exhibit 1 to Application to Employ, Case No. C-18-BK-20425 (Cavness BK2), Docket Entry No. 40-1, p. 2.

[44]Order Granting Application to Employ, Case No. C-18-BK-20425 (Cavness BK2), Docket Entry No. 48.

[45]Exhibit CAV-4 to Cavness Objection, Case No. H-19-MP-302 (Synergy), Docket Entry No. 6-4, p. 3.

[46]Id.

[47]Id. at 4.

[48]Id. at 1.

December 27, 2018, and Newton emailed Marinelli on December 28, but they did not communicate thereafter.[49]

On December 31, 2018, and January 1, 2019, Berleth's CM/ECF credentials were used to file bankruptcy petitions in the Southern District of Texas on behalf of Afaf Ali Ahmad and Darian Butler.[50] In each case Synergy prepared and/or filed the petition or other documents.[51] Each case was assigned to Judge Isgur.

On January 11, 2019, Berleth contacted Newton and advised him that Marinelli was no longer associated with Synergy.[52] According to Newton, Berleth requested a working lunch meeting with Cavness's attorneys to further discuss settlement.[53]

On January 14, 2019, Berleth and Berleth's wife met with Newton, Newton's wife, and Newton's daughter (all of whom are attorneys at Newton & Associates) at a Mexican restaurant in the Woodlands.[54]

---

[49]Cavness Objection, Case No. H-19-MP-302 (Synergy), Docket Entry No. 6, ¶ 38.

[50]See In re Afaf Ali Ahmad, Case No. H-18-BK-37392; In re Darian Butler, Case No. H-19-BK-30007.

[51]See, e.g., Transcript of February 1 Hearing, Case No. H-18-BK-30007, Docket Entry No. 58, p. 12; Agreed Order Sanctioning Robert Berleth, Case No. H-19-BK-30007, Docket Entry No. 70, ¶¶ 7, 10.

[52]Cavness Objection, Case No. H-19-MP-302 (Synergy), Docket Entry No. 6, ¶ 39; Berleth Deposition, Case No. H-19-MP-302 (Synergy), Docket Entry No. 27A, p. 14.

[53]Cavness Objection, Case No. H-19-MP-302 (Synergy), Docket Entry No. 6, ¶ 39.

[54]Berleth Deposition, Case No. H-19-MP-302, Docket Entry No. 27A, p. 19; Transcript of March 5 Hearing, Case No. H-19-MP-302 (Synergy), Docket Entry No. 14, pp. 13-14.

Berleth's and Newton's accounts of what was said at the meeting are detailed in Section II, below. It is undisputed that at the meeting (1) Berleth informed Newton that Synergy was repudiating the settlement agreement reached with Marinelli; (2) Berleth sought to settle the case for less than $15,000; (3) Newton did not agree to settle the case for a lesser amount; and (4) during the course of the meeting, Berleth told Newton that (a) Synergy files 50 bankruptcy cases a month, at least some of which are in the state of Texas; and (b) Synergy could refer automatic stay and discharge injunction work from those cases to Newton's law firm.[55]

## F. Ongoing Proceedings Involving Berleth, Synergy, and Cavness

On January 15, 2019, Judge Isgur held a hearing to address deficiencies in the Ahmad and Butler petitions.[56] At the hearing Berleth stated that Synergy had prepared the Butler petition, which he conceded was "grossly deficient," and that Berleth was being paid as "appearance" counsel in the case.[57] Based on Berleth's statements at the hearing, Judge Isgur scheduled another hearing for February 1, 2019, and directed Synergy to appear.[58]

---

[55]Cavness Objection, Case No. H-19-MP-302 (Synergy), Docket Entry No. 6, ¶ 40; Berleth Deposition, Case No. H-19-MP-302 (Synergy), Docket Entry No. 27A, pp. 14-15,17; Joint Response to Show Cause Order, Case No. H-19-MP-302 (Synergy), Docket Entry No. 25, ¶¶ 8-13.

[56]Transcript of Motion Hearing, Case No. H-19-BK-30007 (Butler), Docket Entry No. 55.

[57]Id. at 14-16.

[58]Courtroom Minutes, Case No. H-19-BK-30007 (Butler), Docket Entry No. 13.

According to Newton, on January 19, 2019, he "followed up with Mr. Berleth after the Cavness lunch meeting by email but [Berleth] never responded back."[59] Neither a copy of that email nor a quotation of its contents is in the record. Berleth stated in his deposition that "I made that [$10,000] offer to Mr. Newton, and then sometime later he emailed me his decline of that offer."[60]

On January 23, 2019, Newton filed an Updated Status Report in the Cavness bankruptcy informing the court that he had met with Berleth, who informed Newton that Synergy was repudiating the settlement agreement reached with Marinelli.[61] Newton wrote: "With the repudiation of the settlement of which was in the process of being finalized, along with other issues that have come to light, Mr. Cavness informs the Court of his intent to file an adversary proceeding against Synergy Law, its associated entities, its principals, Scott Marinelli and its local counsel on or before February 28, 2019."[62] The Updated Status Report does not mention an offer by Berleth to refer cases to Newton.

On February 1, 2019, Judge Isgur held a hearing in the Butler bankruptcy case at which Synergy Law was ordered to appear.[63] Based

---

[59]Cavness Objection, Case No. H-19-MP-302 (Synergy), Docket Entry No. 6, ¶ 43.

[60]Berleth Deposition, Case No. H-19-MP-302 (Synergy), Docket Entry No. 27A, p. 27.

[61]Updated Status Report on Rule 11 Inquiry, Case No. C-18-BK-20425 (Cavness BK2), Docket Entry No. 64.

[62]Id. at 2.

[63]Transcript of Hearing, Case No. H-19-BK-30007 (Butler), Docket Entry No. 58.

on testimony at the hearing, Judge Isgur entered an Order to Show Cause why Synergy Law should not be sanctioned for violating "numerous provisions of sections 526, 527, and 528 of the Bankruptcy Code" and be barred from the unauthorized practice of law in Texas, and why Berleth should not have his CM/ECF filing privileges suspended for allowing Synergy Law to file cases using his login credentials.[64]

On February 4, 2019, Judge Isgur held a hearing on the February 1 Order to Show Cause.[65] At the conclusion of the hearing, the court temporarily suspended Berleth's CM/ECF filing privileges.[66]

On February 6, 2019, Judge Isgur entered a Temporary Restraining Order ("TRO") prohibiting Synergy Law from practicing law in Texas.[67]

On February 20, 2019, counsel for Synergy and the Bankruptcy Trustee appeared and preliminarily agreed to a permanent injunction against Synergy practicing law in the Southern District of Texas, and Synergy agreed to disgorge fees received from several clients, including Cavness.[68] Berleth agreed in principle to a bar from filing any bankruptcy petitions in the Southern District of Texas

---

[64]Order, Case No. H-19-BK-30007 (Butler), Docket Entry No. 43.

[65]Transcript of TRO/Show Cause Order Status Conference, Case No. H-19-BK-30007 (Butler), Docket Entry No. 57.

[66]Id. at 24-25.

[67]Temporary Restraining Order, Case No. H-19-MP-302 (Synergy), Docket Entry No. 1.

[68]Transcript of Preliminary Injunction Hearing, Case No. 19-BK-30007 (Butler), Docket Entry No. 81, pp. 14-15.

for one year, a two-month suspension of his CM/ECF filing privileges, to re-take the ECF filing class, to perform five hours of ethics CLE, and to disgorge $4,000 in fees received in connection with the Ahmad case.[69] The court set another hearing for March 5 at which the parties would either present an agreed Form of Orders or, if there was no settlement, present witnesses.[70]

On February 22, 2019, Newton was reportedly first notified of the pending agreed judgment against Synergy and the existence of a miscellaneous case addressing it.[71]

On February 26, 2019, Newton filed a notice of appearance in the Synergy miscellaneous case.[72]

On March 1, 2019, a proposed Agreed Judgment was entered against Synergy.[73] The Agreed Judgment would have provided for a permanent injunction barring Synergy Law from operating as a debt relief agency, bankruptcy petition preparer, mortgage assistance provider, or from the unauthorized practice of law in the Southern District of Texas.[74] The Agreed Judgement also provided for

---

[69]Id. at 23.

[70]Id. at 26.

[71]Cavness Objection, Case No. H-19-MP-302 (Synergy), Docket Entry No. 6, ¶ 5.

[72]Notice of Appearance and Request for Notice, Case No. H-19-MP-302 (Synergy), Docket Entry No. 4.

[73]Agreed Judgement Sanctioning Synergy Law LLC, Case No. H-19-MP-302 (Synergy), Docket Entry No. 5.

[74]Id. at 4.

disgorgement of fees received from several Synergy Law clients, including $2,550 received from Sean Cavness.[75]

On March 3, 2019, Cavness (through Newton) filed an objection to the proposed Agreed Judgment Sanctioning Synergy Law, stating that Cavness was an interested party, that Cavness was not consulted before submission of the Agreed Judgment, and that the Agreed Judgment did not include awards for Cavness's filing fees, emotional anguish, punitive damages, or attorneys' fees.[76]

Included in Cavness's objection to the Agreed Judgment was the allegation that, at the January 14, 2019, lunch in the Woodlands, Berleth told Newton that if Newton would agree to no longer pursue the Cavness matter Synergy would refer all of its automatic stay and discharge injunction work to Newton.[77]

On March 4, 2019, an Agreed Order was signed and entered sanctioning Berleth in connection with the Butler, Ahmad, and Botello bankruptcy cases.[78] The parties to the order stipulated that Berleth assisted Ahmad, Butler, and Botello — directly and indirectly through Synergy — with filing bankruptcy petitions in the Southern District of Texas; that Berleth provided his CM/ECF credentials to Synergy; and that Synergy used Berleth's credentials

---

[75]Id. at 5.

[76]Cavness Objection, Case No. H-19-MP-302 (Synergy), Docket Entry No. 6.

[77]Id. ¶ 40(c).

[78]Agreed Order Sanctioning Robert W. Berleth, Case No. H-19-BK-30007 (Butler), Docket Entry No. 70.

to file documents in all three cases.[79]  The court ordered that Berleth:

> (1)  be enjoined from filing bankruptcy petitions on behalf of debtors in the Southern District of Texas for one year,
>
> (2)  have his CM/ECF filing privileges suspended for 60 days,
>
> (3)  return $4,000 to Ahmad,
>
> (4)  retake the CM/ECF training course for users within five days, and
>
> (5)  complete five hours of ethics Continuing Legal Education within six months.[80]

On March 5, 2019, Judge Isgur held the scheduled hearing concerning Synergy and Berleth.  He began by stating he wanted to address the allegations in Cavness's objection to the Agreed Judgment Sanctioning Synergy Law.[81]  Specifically, Judge Isgur stated:

> . . . I want to know why I should not vacate my order approving the Berleth settlement until there can be a full hearing on whether those allegations are accurate and whether the Court is required by law to refer Synergy and Mr. Berleth for a criminal prosecution based on the alleged bribe offered to Mr. Newton.[82]

Based on testimony at the March 5 hearing, Judge Isgur entered a Show Cause Order and scheduled a hearing for May 23 to determine

---

[79]Id. ¶¶ 7-10.

[80]Id. ¶ 13.

[81]Transcript of Hearing Re: Injunction and Order of Suspension, Case No. H-19-MP-302 (Synergy), Docket Entry No. 14, p. 4.

[82]Id.

whether the court was required to make a criminal referral.[83] Judge Isgur also entered a Show Cause Order stating that the court would determine at the hearing whether it should vacate, alter, or amend its March 4 order approving sanctions against Berleth.[84]

On April 9, 2019, Cavness filed an adversary proceeding against Synergy Law, several of its employees, and two Texas-based "of counsel" attorneys, alleging violations of the automatic stay, as well as restrictions on debt relief agencies, failure to provide bankruptcy disclosures, and other causes of action.[85]

On May 11, 2019, Berleth was deposed by attorneys for the United States Trustee's Office and Synergy Law.[86]

On May 22, 2019, attorneys for Berleth, Synergy, and Cavness filed a Joint Agreed Response to the Show Cause Order against Synergy and Berleth.[87]

On May 23, 2019, Judge Isgur held a hearing on the Show Cause Orders against Berleth and Synergy, at which counsel for Berleth,

---

[83]Show Cause Order, Case No. H-19-MP-302 (Synergy), Docket Entry No. 9.

[84]Show Cause Order, Case No. H-19-BK-30007 (Butler), Docket Entry No. 73.

[85]Cavness Adversary Complaint, Case No. H-19-AP-2012 (Cavness AP), Docket Entry No. 1.

[86]Berleth Deposition, Case No. H-19-MP-302 (Synergy), Docket Entry No. 27A.

[87]Joint Agreed Response to Show Cause Order, Case No. H-19-MP-302 (Synergy), Docket Entry No. 25.

Synergy, Cavness, and the Trustee appeared.[88] After hearing from the parties, the court took the criminal referral under advisement pending review of Berleth's deposition.[89] The court also observed that, based on a recent filing from Newton, it appeared that Synergy was continuing to file bankruptcy petitions in Texas in violation of the TRO.[90] Counsel for Synergy and the Trustee stated that they were discussing the matter and would file any necessary pleadings.[91] The court stated that it would await filings before scheduling any hearings.[92]

Newton and counsel for Synergy stated at the May 23, 2019, hearing that they had reached an agreement to settle the Cavness matter and would circulate a motion for the court's approval.[93]

On June 19, 2019, Cavness filed a Motion to Compromise Controversy, seeking the court's approval of a settlement with Synergy on the following terms: Synergy agreed to pay Cavness $5,410 (two times the amount Cavness paid Synergy, plus a filing fee), and Synergy agreed to pay Charles Newton and Associates

---

[88]Transcript of Show Cause Hearing, Case No. H-19-MP-302 (Synergy), Docket Entry No. 27.

[89]Id. at 35, 42.

[90]Id. at 35-39.

[91]Id. at 42.

[92]Id.

[93]Id. at 39-40.

$25,000.[94] In support of his motion, Cavness averred that the factors to be considered by the court all weighed in favor of approval, including that "the parties have engaged in arms-length negotiations and that the settlement agreement reached is an arms-length settlement."[95]

On June 26, 2019, Judge Isgur issued a Memorandum Opinion finding that (1) the court had reasonable grounds to believe that Berleth violated § 152(6), and that (2) the court therefore had a mandatory duty to report Berleth to the United States Attorney pursuant to 18 U.S.C. § 3057(a).[96] Referrals would also be made to the United States District Court and the State Bar of Texas with a recommendation that disciplinary proceedings be commenced against Berleth.[97]

On July 9, 2019, a copy of the Memorandum Opinion was docketed in the instant case as a charge of misconduct.[98]

On July 17, 2019, Judge George C. Hanks, Jr. sent a letter to Berleth in which he (1) notified Berleth that the disciplinary

---

[94]First Amended Motion to Compromise Controversy Pursuant to FRBP 9019, Case No. C-18-BK-20425 (Cavness BK2), Docket Entry No. 85, ¶¶ 16-18.

[95]Id. ¶¶ 19-23.

[96]Memorandum Opinion, Case No. H-19-BK-30007 (Butler), Docket Entry No. 88, pp. 2, 19.

[97]Id. at 19.

[98]Docket Entry No. 1. References to docket entries with no case number refer to filings in the instant case.

matter had been referred to Judge Hanks for preliminary review, and (2) ordered Berleth to file any response to Judge Isgur's charge by July 31, 2019.[99]

On August 12, 2019, Berleth wrote to Judge George C. Hanks, Jr. informing him that Berleth did not receive Judge Hanks' letter until July 29, and apologizing for the delay.[100] Berleth attached a Respondent's Preliminary Statement, described in more detail below, in which he stated: "The Respondent strongly disagrees with the characterization and interpretation of [Judge Isgur's] opinion, and adamantly den[ies] any and all criminal wrongdoing associated therewith."[101]

On August 23, 2019, Judge Hanks issued a Preliminary Report recommending that "disciplinary proceedings should proceed on the charge that Robert W. Berleth committed a violation of 18 U.S.C. § 152(6) by offering case referrals to an opposing lawyer to induce that lawyer to reduce his settlement demand in a bankruptcy adversary proceeding. Specifically, such proceedings are necessary to resolve key factual disputes raised by [Berleth's Preliminary Response]. . . ."[102]

---

[99]Letter from Judge George C. Hanks, Jr. to Robert Berleth, Docket Entry No. 2.

[100]Letter from Robert Berleth to Judge George C. Hanks, Jr., Docket Entry No. 5, p. 3.

[101]Respondent's Preliminary Statement, Docket Entry No. 5, p. 2.

[102]Preliminary Report, Docket Entry No. 6, p. 5.

On August 28, 2019, Chief Judge Lee H. Rosenthal entered an order appointing the undersigned judge as hearing judge pursuant to Rule 5 of the Southern District of Texas Rules of Discipline.[103]

On September 5, 2019, the court appointed Jon Liroff as special prosecutor pursuant to Rule 5(E).[104]

On December 9, 2019, the court entered an order setting the case for hearing on January 14, 2020.[105]

On January 14, 2020, the court held a hearing in open court at which the special prosecutor and Berleth presented evidence and arguments.[106]

Having carefully considered the evidence and the parties' arguments, the court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a)(1).

## II.  Factual Issues

Newton and Berleth have provided several statements, directly and through counsel, regarding the January 14, 2019, meeting in the Woodlands.

---

[103]Order, Docket Entry No. 7.

[104]Order, Docket Entry No. 8.

[105]Order, Docket Entry No. 9.

[106]Minute Entry Order, Docket Entry No. 13.

## A.	January 23, 2019 — Updated Status Report on Rule 11 Inquiry[107]

In an Updated Status Report to the bankruptcy court on Cavness's proposed adversary proceeding against Synergy, filed nine days after the January 14, 2019, lunch meeting with Berleth, Newton stated:

> On Monday, January 18, 2019 [sic][108] undersigned counsel met face-to-face with Robert Berleth, who had reportedly been retained by Synergy Law due to the recent termination of Scott Marinelli by Synergy Law. During that meeting Mr. Berleth advised that Synergy Law wished to substantially reduce the amount of the settlement funds that had previously been agreed upon with Scott Marinelli. It was explained that Scott Marinelli, who was employed by Synergy Law at the time, did not have the authority to enter into the agreement made with undersigned counsel. Therefore, Synergy Law was repudiating the agreement and wished to negotiate a new agreement with lighter terms.
>
> With the repudiation of the settlement of which was in the process of being finalized, along with other issues that have come to light, Mr. Cavness informs the Court of his intent to file an adversary proceeding against Synergy Law, its associated entities, its principals, Scott Marinelli and its local counsel on or before February 28, 2019.[109]

---

[107]Updated Status Report on Rule 11 Inquiry as to Evidentiary Support for Filing a Cause of Action Against Synergy Law, LLC and Others ("Updated Status Report"), Case No. C-18-BK-20425 (Cavness BK2), Docket Entry No. 64.

[108]January 18, 2019, was a Friday. All other references in the record indicate that this meeting took place on Monday January 14, 2019.

[109]Updated Status Report, Case No. C-18-BK-20425 (Cavness BK2), Docket Entry No. 64, p. 2.

**B.   March 3, 2019 — Cavness Objection to Agreed Judgment Sanctioning Synergy**[110]

In an objection to a proposed Agreed Judgment sanctioning Synergy — and ordering disgorgement to Cavness, among others — Newton stated:

> 17.   It appears that the local counsel Synergy engages are typically compromised in some way, either ethically, or lack experience, and/or lack earnings.

> For example:

> [Discussion of two attorneys in the Southern District of Texas and one attorney in the District of Kansas who were reportedly affiliated with Synergy Law and had been suspended from the practice of law or otherwise sanctioned.]

> .  .  .

> c.   Robert Berleth only recently graduated from law school, is inexperienced, and is self-employed.

> [Discussion of criminal charges against Scott Marinelli and actions against Synergy Law in other jurisdictions.]

> 20.   Synergy's recruitment of Mr. Berleth and its handling of the SDTX cases of *Butler*, *Botello*, *Cavness*, and/or *Martinez* and *Villarreal*, is evidence that the limited sanctions against Synergy has neither averted, discouraged, impeded, nor forestalled the same inappropriate conduct from occuring [sic] in the SDTX or elsewhere.

> [Discussion of damages to Cavness and prior settlement agreement with Synergy.]

> 39.   On January 11, 2019 undersigned counsel was contacted by Robert Berleth advising that Scott

---

[110]Cavness Objection, Case No. H-19-MP-302 (Synergy), Docket Entry No. 6.

Marinelli was no longer with Synergy Law. Mr. Berleth requested a working lunch meeting with Mr. Cavness' attorneys in The Woodlands, Texas to discuss the settlement further.

40. On January 14, 2019 counsel for Mr. Cavness had a lunch meeting at Natalita's #2 Mexican Restaurant in The Woodlands, Texas *per* Mr. Berleth's request. During that meeting, Mr. Berleth informed counsel:

    a. That Synergy Law was repudiating the settlement agreement it had reached with Mr. Cavness.

    . . .

    c. That Synergy Law files approximately 50 bankruptcy cases a month in the State of Texas, and if counsel would agree to no longer pursue Mr. Cavness' matter that Synergy would refer all of its automatic stay and discharge injunction work in Texas to Charles Newton & Associates, which could be, in Mr. Berleth's view, substantial. (This offer was refused).

    . . .

43. On January 19, 2019 undersigned counsel followed up with Mr. Berleth after the Cavness lunch meeting by email but [Berleth] never responded back.[111]

## C. March 5, 2019 – Hearing on Preliminary Injunction Against Synergy Law[112]

At a March 5, 2019, hearing, after being sworn before Judge Isgur, Newton testified as follows regarding paragraph 40(c) of the Cavness Objection:

**THE COURT:** Is that a truthful statement?

---

[111]*Id.* ¶¶ 17-43.

[112]Transcript of Hearing Re: Injunction and Order of Suspension, Case No. H-19-MP-302 (Synergy), Docket Entry No. 14.

> **MR. NEWTON:** That's a truthful statement.
>
> **THE COURT:** Is there anything that needs to be added to it to make it the truth, the whole truth, and nothing but the truth?
>
> **MR. NEWTON:** The only reason I'm hesitating is we had a lengthy conversation, and part of it began in this restaurant and proceeded out into the parking lot when we left, and the issue arose twice during that time. The last time was in the parking lot, and we told Mr. Berleth that we would not accept that offer. The first time it was broached I told Mr. Berleth that I was here to discuss my client and not my relationship or my business – pardon me – the law firm's business with any client. And I had thought that that would push the subject off. It didn't. It continued.[113]

At the March 5, 2019, hearing, Berleth's attorney, Adelita Cavada, stated:

> **MS. CAVADA:** Thank you. Your Honor, I think the accusation of a bribe is not an accurate description of the communications between Mr. Berleth and Mr. Newton. I think it's sensationalized a little bit. Mr. Berleth at the time (indisc.) tried to work things out on Synergy's behalf. I'm not sure when that conversation was, but it appeared that – I think it was more of a, look, Synergy has these bankruptcy cases; would you consider – can we refer bankruptcy cases to you. I don't think it – I don't believe it was in any way a bribe.[114]

### D. April 9, 2019 – Cavness Adversary Complaint Against Synergy[115]

In an adversary complaint filed by Cavness against Synergy Law, Newton alleged:

---

[113]Id. at 17.

[114]Id. at 5.

[115]Cavness Adversary Complaint, Case No. C-19-AP-2012 (Cavness AP), Docket Entry No. 1.

56. On January 11, 2019 undersigned counsel was contacted by Robert Berleth who advised that Scott Marinelli was no longer with Synergy Law. Mr. Berleth requested a working lunch meeting with Mr. Cavness' attorneys in The Woodlands, Texas to discuss the settlement further.

57. On January 14, 2019 counsel for Mr. Cavness had a lunch meeting at Natalita's #2 Mexican Restaurant in The Woodlands, Texas per Mr. Berleth's request. During that meeting, Mr. Berleth informed counsel that the global settlement between Mr. Cavness and Synergy Law was repudiated.[116]

## E. May 11, 2019 - Berleth Deposition[117]

Berleth was deposed by Hector Duran for the U.S. Trustee's Office and Brad Parker for Synergy Law, LLC. Berleth was represented at the deposition by Adelita Cavada.

Berleth testified as follows:

Scott had apparently entered into some kind of settlement agreement with Chuck outside of Synergy's knowledge. And Synergy basically said - asked me to fix it, similar to the situation I had in Montana, which is what I was trying to do. It was a settlement discussion, which is exactly why we tried to - I wanted to meet with him face-to-face to see if we could work a reasonable settlement out. I believe that Chuck Newton was at the time trying to basically extort Synergy for the idea of we're going to file all these horrible terrible things about you and bring the wrath of the bankruptcy court down upon you if you don't pay me money.[118]

. . .

I'm not sure what you're characterizing there, whether you're saying that I'm the one that told them I could

---

[116]Id. ¶¶ 56-57.

[117]Berleth Deposition, Case No. 19-MP-302 (Synergy), Docket Entry No. 27A.

[118]Id. at 20.

reduce it or whether they asked me to reduce it, but that was the intent with me meeting with Chuck Cavness (sic), for me to reduce the amount of money, reduce their exposure. And I think everybody on the Synergy side agreed that Chuck Cavness was asking an exorbitant amount.[119]

. . .

Q. So you made a $10,000 settlement offer to Mr. Newton. Did he accept that offer?

A. I recall I had authorization from Synergy to settle if for $10,000. I made that offer to Mr. Newton, and then sometime later he emailed me his decline to that offer.[120]

. . .

Q. Did Mr. Newton, on January 14th, 2019, ever tell you how much money it would cost Synergy Law to settle the Cavness matter?

A. I think he wanted 20,000 or - I think he wanted 20,000 for him and 5,000 for Mr. Cavness, as I recall. It may not be. I think that was what he wanted off the top of my head. I don't know the details as we sit here today.[121]

. . .

The other point that I made to him was, I believe Mr. Cavness paid I think about $4,500, $5,000 as I recall, and my conversation to him was, This makes your client whole, right? So your client is going to get all of the money they paid to Synergy back and it pays your client's bankruptcy counsel, right? Because the presumptive rate is I think 4750. I don't know what it is, but it's around - less than $5,000 in the Southern District of Texas. And so this would make your client whole and pay for his bankruptcy through other counsel. So, you know, not negotiating with Chuck Newton because I really felt like while we were there, it was Chuck Newton was

---

[119]Id. at 79.

[120]Id. at 26-27.

[121]Id. at 27.

doing the negotiating for himself, not for Mr. Cavness, because the $10,000 settlement that I offered would have made his client whole and made the -- not only made his client whole, but also paid for his client's bankruptcy. So that was another one of my points in the settlement.[122]

. . .

Q. Okay it is alleged in paragraph 40C that you informed Mr. Newton that Synergy Law files approximately 50 bankruptcy cases a month in the state of Texas, and if Mr. Newton would agree to no longer pursue Mr. Cavness' matter, that Synergy would refer all of its automatic stay and discharge injunction work in Texas to Charles Newton and Associates, which could be, in your view, substantial. Is that allegation true?

A. It is patently false.

Q. You deny ever making that statement to Mr. Newton?

A. Certainly. I never said that they filed 50 cases a month in the state of Texas. I think that they file 50 bankruptcy cases a month. I don't know if the state of Texas is a correct assessment there. Going through it sentence by sentence, there was no - if Counsel would agree to no longer pursue Mr. Cavness' matter, there was no quid pro quo. There was a conversation about general networking of what is his law firm surrounded, what does he do, what's his business model for his law firm, and we had that conversation. But it had nothing to do with the current bankruptcies and nothing to do with Mr. Cavness.[123]

. . .

A. I think I mentioned 50 bankruptcy cases a month. I don't think I said they were solely in the state of Texas.[124]

. . .

---

[122]Id. at 26.

[123]Id. at 16.

[124]Id. at 17.

Q. And the second part of paragraph 40C of Exhibit 2 is you never – I believe you said that there was never any quid pro quo?

A. Absolutely not.

Q. So you didn't make an offer to Mr. Newton that he drop the Cavness matter in return for helping Synergy out with stay and discharge injunction work?

A. Absolutely not. I did discuss the settlement of the Cavness matter. We did discuss at a completely later time in the conversation about, again, just general networking. I offered my own services because typically my law firm is a collections law firm so I offered to him to, you know, hey, I know you've got some default judgments that are sitting there taking up drawer space. Send them over and maybe I can take a look and collect some of them which is kind of what I do. But there was certainly no quid pro quo any more than he was trying to bribe me with work of collecting his default judgment.

Q. So are you alleging that Mr. Newton is telling a lie when he includes paragraph 40C in Exhibit 2 and files it with the bankruptcy court?

A. I think he is very self-servingly interpreting the conversation that we had at lunch.[125]

. . .

A. I haven't called any of them liars. I said they are self-servingly interpreting multiple different parts of a two-hour long conversation to take certain components of it out of context or line up certain components of it to make this paragraph, so that's a self-serving interpretation. It's obviously a biased paragraph that I disagree with.[126]

. . .

A. Yeah. We talked about everything from Mexican food to pickup trucks to general networking. So at some point

---

[125]Id. at 17-18.

[126]Id. at 18-19.

what I do and my business model came up. At some point what he does and his business model came up and we discussed those. It had nothing to do with Cavness. At that point, I mean, the first 30 or 45 minutes of the meeting, we had already said everything we were going to say about Synergy and Cavness, and then we moved on to generic.[127]

. . .

Q. And your testimony here today under oath is that you never tied that offer of your own services to dropping the Cavness matter?

A. Absolutely not. Not even close. There was no connection to the Cavness case or my services or his services or any future networking at all.[128]

. . .

unlike paragraph C of Chuck Newton's exhibit where I can patently stand up and say he's lying or misinterpreting.[129]

Q. And that's the position you're going to take on May 23rd when the ordered show cause is heard by the bankruptcy court?

A. On paragraph C?

Q. 40C of Exhibit 2.

A. That interpretation of the conversation is absolutely patently false.[130]

. . .

Q. Okay. But I'm just asking for your opinion of it. You thought that Chuck Newton was charging way too much money for that kind of work, didn't you?

---

[127]Id. at 22.

[128]Id. at 22-23.

[129]Id. at 36.

[130]Id.

A.   Absolutely.   Nobody asked him to go and do all of
this . . . . I don't think Shawn Cavness asked him to do
that.  And, you know, Synergy's position was, again, like
I told him, if we're going to pay $20,000 on this thing,
we're going to pay it to Cavness.  We're going to pay off
the balance on his house and be done with it.[131]

. . .

The first half of the lunch, I was merely negotiating
with  him  as  a  settlement.    Then  we  closed  those
settlement negotiations.  We talked about Mexican food.
We talked about - my wife is from El Paso.  She speaks
Spanish.   She talks about Mexican food a lot.   And we
talked about pickup trucks, and that's when his business
model came up of, well, this is what I do.  I wait for
the violation of the automatic stay typically against -
I think he described it as the big banks are the ones
that violate the automatic stay, whether intentionally or
unintentionally, doesn't matter, but they do.  And his
business model is kind of going and, for lack of a better
term, popping the big banks for violating that stay.  In
a completely separate conversation, that's when I said,
well, Synergy has a lot of clients just by the numbers.
Some of those clients are going to have their automatic
stays violated.  By the numbers, some of those clients
are going to be here in Texas.[132]

. . .

It was simply a networking issue, similar to him saying
I've got a whole drawer full of default judgments that
are empty.[133]

. . .

Q.   But this guy is saying, I need 15,000 bucks.  And
isn't it true that you were trying to do what you could
to knock that down for Synergy and say, listen, I think
I can get that down; I think I can get it down?

A.   Sure.  It wasn't about I think I can get it down.  I
think the conversation my opinion of it - without having
a conversation that I had with them - my opinion of it

---

[131]Id. at 62.

[132]Id. at 64.

[133]Id.

was that it was an unrealistic number. Compared to what other settlements had been done in other districts and jurisdictions, I felt like Chuck Newton was, you know, pigs get fat and hogs get slaughtered. He was asking for, quite frankly, way too much for what he had done, and compared to some of the other settlements, he was off the charts way too much. So that was my opinion of it, and I tried to express that to Chuck Newton. And I tried to express to Chuck Newton that an agreed settlement is probably never going to be as much as you want and but it is – it does turn the lights on for a day.[134]

.  .  .

[T]hat was the intent with me meeting with Chuck Cavness (sic), for me to reduce the amount of money, reduce their exposure.[135]

.  .  .

Now, I assert that at no point was anything I said intended to be a bribe. I didn't invite it as a bribe. It was merely a conversation about networking, and I network with opposing counsel on a regular basis.[136]

.  .  .

Q. But your testimony here today is that you never tied settlement or dropping the Cavness matter with the stay and discharge injunction work in Texas with Mr. Newton?

A. Absolutely no. Specifically, I did not make that connection. It was not intended to be that connection. There was no intent to bribe. Absolutely not. Now, we did have the conversation. But to follow-up on your previous question, I believe it's worked. Mr. Cavness still doesn't have the $10,000 that Synergy offered on that day. And so far, that settlement offer has held true.[137]

---

[134]Id. at 75.

[135]Id. at 79.

[136]Id. at 80.

[137]Id. at 95.

**F.  May 22, 2019 - Joint Agreed Response to Show Cause Order**[138]

On May 22, 2019, Cavness, Synergy, and Berleth filed a Joint
Agreed Response to the May 6 Show Cause Order, stipulating to a
number of facts.  The first paragraph of the joint response stated
that it was being submitted by Cavness "by and through his attorney
of record, Charles (Chuck) Newton," and by Berleth "individually,
and by and through his attorney of record, Adelita Cavada."[139]  The
joint response states, in relevant part:

> 5.  Newton and Synergy's attorney, Scott Marinelli,
>     were in the process of negotiating a proposed
>     settlement agreement (the "Proposed Settlement")
>     to present to the Court when Marinelli [became]
>     unavailable to consummate the Proposed Settlement.
>
> 6.  Synergy then requested that attorney Berleth make
>     contact with Newton for purposes only of
>     completing the Proposed Settlement.
>
> 7.  Although Synergy understood that Berleth would
>     make contact with attorney Newton, it was unaware
>     of [the] business luncheon requested by Berleth on
>     January 14, 2019.
>
> 8.  At the business luncheon, Berleth believed he
>     could get the best outcome for Synergy if he was
>     able to arrive at an agreement for an amount of
>     less than $15,000.00 as a zealous advocate for his
>     client.
>
> 9.  As part of a trial balloon of sorts to get
>     negotiations started toward an agreement to settle
>     the Cavness case for an amount of less than the
>     $15,000.00, Berleth made the statement to Newton
>     that he believed Synergy files about 50 bankruptcy
>     cases a month in the State of Texas.  Mr. Berleth

---

[138]Joint Agreed Response to Show Cause Order, Case No. H-19-MP-
302 (Synergy), Docket Entry No. 25.

[139]Id.

estimated that number. Synergy, however, neither knew nor authorized Berleth to make such a statement.

10. Mr. Berleth stated that Synergy could refer all of the automatic stay and discharge injunction work to Newton's law firm. Again, Synergy neither knew nor authorized Berleth to make such a statement.

11. Berleth had no knowledge of the number of bankruptcy cases [that] were filed by Synergy in Texas or whether any automatic stay or discharge injunction work emanated from any such cases.

12. At the luncheon meeting, Berleth also made other possible proposals of payment of lesser amounts to settle the Cavness case below the $15,000.00 made the subject of the Proposed Settlement.

13. Newton, on behalf of Cavness, refused all such proposals and did not rely on Berleth's foundationless statements.

14. Berleth had intended to follow up with Newton after the luncheon meeting, after he had an opportunity to advise Synergy, in a more positive way. However, he was confronted by the Court the next morning, January 15, 2019, with his representation in the Darian Butler case, and other matters.

15. Mr. Berleth is profoundly sorry for the issues caused by his attempt to negotiate down the $15,000.00 Proposed Settlement. He genuinely apologizes to this Court, Synergy, Mr. Newton, and Mr. Cavness.

16. Mr. Berleth will accept the judgment of this Court for his actions.

17. Not as an excuse but an explanation for his actions, Robert Berleth wishes the Court to know the following:

    a. He was only licensed to practice law on May 1, 2017. He operates his own solo practice, and he is inexperienced in complex bankruptcy matters. His unpracticed actions were extemporaneous and unread.

b. In making the suggestion to Newton he was oblivious to 18 U.S.C. § 152(6). It was not his intent to knowingly and fraudulently offer remuneration to Newton for not filing an adversary proceeding in the Cavness case.

c. As stated, Newton did not accept or rely on the suggestion made, and the goal was merely to make Cavness more amenable to accepting less than the $15,000.00 made the subject of the Proposed Settlement.

d. Mr. Berleth's comment to Newton was wrong and at variance with the intent of the meeting. It was mercurial.

18. Sean Dean Cavness, Chuck Newton, and Synergy Law, LLC believe that Robert Berleth's comment was in error, and was made as a result of his inexperience. Mr. Berleth has already entered into an Agreed Order for sanctions, and has complied with the order, which the Parties believe is measured and appropriate. The Parties would not like to see further actions taken that may irreparably damage his ability to recover from his prior bad practices.

19. Synergy has agreed to a new settlement in the Cavness matter that will be presented to the Court.

20. The Parties each hope that given the Court's discretion, Mr. Berleth will go on in the practice of law without making such mistakes again.[140]

## G. May 23, 2019 – Hearing on Order to Show Cause[141]

In a hearing before Judge Isgur addressing the Court's potential obligation to make a criminal referral regarding the Berleth matter, Newton stated:

---

[140]Id. ¶¶ 5-20.

[141]Transcript of May 23, 2019, Hearing on Order to Show Cause, Case No. H-19-MP-302 (Synergy), Docket Entry No. 27.

**MR. NEWTON:** . . . My general recommendation for the Court is I don't want you to make the referral. Mine is more a practical matter than it is a legal matter. I think we were all young attorneys once that had not practiced very long. My experience with Mr. Berleth over the course of this matter is that he can be both zealous and he's inexperienced, and those are combinations that don't go very well together. And I don't know how you get over that except with experience.

As for the law, I'm not sure that he -- I stick with what I told the Court. But I'm not sure in the hindsight, from his standpoint and from his authority, I'm not sure he knowingly made offers, in his mind, on how to proceed. And if he didn't make knowing offers, maybe the Court has to refer it, but I think the Court has to determine whether or not there's some reasonable aspect. And if there's no knowingness, I'm not sure it's reasonable.

What I would hate to see is that Mr. Berleth's - I'm not sure that he shouldn't be sanctioned in some way because I think that there - as the Court has indicated, there has to be some statement made. But I also know how these criminal referrals get out of hand. I would hate to see a young attorney's life ruined because he made some, I think egregious errors. But he made some errors starting out in practice when he simply didn't know better. If he was with a firm or he's with some mentorship, whether he knew what he was doing, but he's a year and-a-half out of school. I'm not sure law school prepares you for that. Lord knows when I started practicing I made a lot of mistakes and the judges taught me the hard way how to practice law.[142]

. . .

So my point is I think he was irresponsible. I have some question on whether or not he knowingly did something, made an offer. He did make an offer, but whether he knowingly did it with - knowing that it - knowing that Synergy did not authorize that conduct, that Synergy authorized the acceptance of the $15,000 offer and that he wanted to impress Synergy. Synergy did not have any intention of sending me business. And I'm not sure where Mr. Berleth got the idea. But I think what we've narrowed down is that he -

---

[142]Id. at 29-30.

**THE COURT:** I've got to ask you. Does that make it better or worse?

**MR. NEWTON:** I'm not sure, Your Honor.

**THE COURT:** I'm not either.

**MR. NEWTON:** But I think what makes it worse is referring it for a criminal referral. If you want to sanction him, if you want to make him go further than what you have, I think that that's appropriate. I think what happened, happened.[143]

. . .

**THE COURT:** Well, but what does knowingly mean? You're telling me he didn't do it knowingly. I think he did it very - from what I have seen, and I haven't read the deposition yet, it was very knowing. He was trying to persuade you to back off.

**MR. NEWTON:** Yes, he was doing that.

**THE COURT:** And he knew who you were.

**MR. NEWTON:** Yes, he knew that.

**THE COURT:** And he knew what he was saying.

**MR. NEWTON:** But I think at some point some people are - should be given the benefit of the doubt.[144]

Counsel for Berleth stated the following:

**MS. CAVADA:** . . . If you look at the totality of that meeting, the intent, the purpose of the meeting was to negotiate down a settlement that had already been there or a settlement entered into with a previous attorney. That was the goal. There was no intent other than to reduce, you know, the 15,000 to something else. There was no intent to bribe or -

**THE COURT:** Well, the bribe was what was intended to reduce the 15,000, right?

---

[143] Id. at 30-32.

[144] Id. at 33.

**MS. CAVADA:** If you think there is a bribe. But those statements in a bulleted list look a lot different than what would have actually occurred in a meeting with his wife, with Mr. Newton, with his family. Those statements were made separately over a two-hour conversation. They were made at different points in time. He did make those statements, but those were statements separate from negotiating. It wasn't in exchange for reducing. There were different parts of the conversations where they talked about Synergy and the number of cases, you know, bankruptcy cases that Mr. Berleth was estimating.

**THE COURT:** Well, read – I'm looking at what you-all filed last night. . . . I'm looking at the statement your client filed with me. It directly links them.

**MS. CAVADA:** It directly links them as part of a conversation.

. . .

But not as an offer. It wasn't an offer.

. . .

I think when you take the statement, this paragraph with everything else in this, it's part of a bigger picture that it was more bluster or – I'm not sure of the word I should – the description I should be using. But Mr. Berleth never, never made a – getting – resolving this matter with Mr. Cavness contingent on Mr. Newton accepting any – any cases or anything. They weren't tied together.

. . .

Seeing it now, you know, with your explanation, I do see how that would – I do see why you would read it that way. When we were reading it and working on it last night I was coming – I didn't read it that way because that's not what Mr. Berleth did. It wasn't a bribe.

. . .

He knowingly – he said the words, but it wasn't to give, offer, receive or attempt to receive anything on behalf of Synergy in exchange for dropping the Cavness matter. They weren't tied together.[145]

---

[145]Id. at 13-16.

## H. August 15, 2019 – Berleth's Preliminary Statement[146]

In a written response to Judge Isgur's charge, submitted to Judge Hanks, Berleth stated the following:

> Without calling Judge Isgur's integrity into question and with the utmost respect for the bench, the Respondent absolutely disputes that he communicated with any constructive, actual, or inadvertent intent to bribe any person at any time. Specifically, he denies that a casual comment made indicating some appropriate business referrals might be possible in the future to Charles Newton was made with any intent or at a point in the conversation to persuade his action or inaction. It was a post-settlement conversation that was general, non-specific and in the nature of networking, as is customary within the legal community. Mr. Newton has stated on the record that he supports the Respondent's interpretation, and that he believes no further action should be taken.
>
> The balance and primary substance of Judge Isgur's long opinion and narrative recites events for which the Respondent has already entered into an agreed order acknowledging inappropriate actions, accepted sanctions and corrective orders, and all of which sanctions and orders have already complied with. These are closed and settled matters. In fact, 16½ pages of the 19-page opinion speak only to previously settled issues, at which time the Honorable Judge agreed no further action was needed. Because Chuck Newton had previously filed a status report in *Cavness*, Judge Isgur was fully aware of the settlement conference and discussions between Berleth and Newton at the time Isgur signed the agreed order. Obviously, his Honor would not have signed the agreed order if he believed further actions were warranted. It wasn't until Synergy Law, LLC openly and blatantly violated Judge Isgur's TRO and injunctive orders—several months later—that the "bribery" issues came to be serious enough to necessitate a 19-page opinion and criminal referral.
>
> The Respondent strongly disagrees with the characterization and interpretation of the opinion, and

---

[146]Respondent's Preliminary Statement, Docket Entry No. 5.

adamantly den[ies] any and all criminal wrongdoing associated therewith.[147]

## I. January 14, 2020 - Berleth's Statements at the Disciplinary Hearing

On January 14, 2020, the court held a hearing at which a special prosecutor presented evidence from the record, and Berleth was given the opportunity to respond. Regarding the January 14, 2019, meeting in the Woodlands, Berleth stated:

> **MR. BERLETH:** . . . I think that all of the parties, Chuck Newton and everybody, are in agreement with, you know, who said what on what day. The question is about the intent of those statements. I think there is general agreement about the intent or the lack of intent of those statements, but there is no real factual disputes about them.[148]

Berleth did not present any additional evidence about the substance of his meeting with Newton.

## III. <u>Charge of Misconduct</u>

### A. Governing Authority

Standards of conduct and disciplinary proceedings enforcing them are governed by the Rules of Discipline, United States District Court for the Southern District of Texas ("Southern District Rules of Discipline").[149] The Southern District Rules of

---

[147]<u>Id.</u> at 1-2.

[148]Transcript of January 14, 2020, Disciplinary Hearing, Docket Entry No. 14, p. 46.

[149]L.R. Appendix A.

Discipline state that lawyers who practice before the court must "act as mature and responsible professionals," and the "minimum standard of practice" is the Texas Disciplinary Rules of Professional Conduct ("Texas Disciplinary Rules").[150] As such, a violation of the Texas Disciplinary Rules "shall be grounds for disciplinary action."[151] However, "the court is not limited by that code."[152] For example, Appendix D to the Southern District Local Rules provides detailed guidelines for professional conduct to which all attorneys practicing in this district are expected to adhere.[153]

The Southern District Rules of Discipline do not specify a burden of proof in disciplinary proceedings. Since the Texas Disciplinary Rules provide the minimum standards for practice before the court, the court will look to them for guidance. Alleged violations of the Texas Disciplinary Rules are governed by the Texas Rules of Disciplinary Procedure, which specify that the burden of proof in both evidentiary hearings and trials of disciplinary actions is by a preponderance of the evidence.[154] This burden of proof applies even where the alleged disciplinary

---

[150]L.R. Appendix A Rule 1.A.

[151]L.R. Appendix A Rule 1.B.

[152]L.R. Appendix A Rule 1.B.

[153]L.R. Appendix D – Guidelines for Professional Conduct.

[154]Tex. R. Disc. P. 2.17(M), 3.08(C).

violation could also be charged criminally.[155]  The court will therefore apply a preponderance of the evidence standard in this case.

## B.  Prior Opinions

The record in this case has already been reviewed by two judges, albeit through different legal frameworks.  The court therefore first addresses what deference, if any, is owed to the prior opinions.

Based on the record developed in the bankruptcy court, Judge Isgur determined in a thorough, 19-page opinion that the court was required to refer Berleth to the United States Attorney pursuant to 18 U.S.C. § 3057(a).[156]  As stated in Judge Isgur's opinion, the issue before the Court was to "determine whether its mandatory duty under 18 U.S.C. § 3057(a) ha[d] been triggered."[157]  Section 3057(a) provides, in pertinent part, that if a judge has "reasonable grounds for believing" that a bankruptcy crime has been committed, the judge must refer the matter to the United States Attorney.

In response to the allegation that Berleth committed a bankruptcy crime — specifically, a violation of 18 U.S.C. § 152(6)

---

[155]E.g., <u>Wilkinson v. Comm'n for Lawyer Discipline</u>, 2019 WL 3330587, at *6 (Tex. App.—Beaumont July 25, 2019, pet. denied) ("Attorney disciplinary proceedings are civil matters, not criminal prosecutions.").

[156]Memorandum Opinion, Docket Entry No. 1, pp. 2, 19.

[157]<u>Id.</u> at 2.

— Judge Isgur held two hearings and allowed discovery, including a deposition of Berleth. In applying § 3057(a) to the record evidence, Judge Isgur concluded that the court had "reasonable grounds to believe that Mr. Berleth violated § 152(6)," and therefore "[t]he Court must report the violation."[158] Judge Isgur also referred the matter to the Southern District of Texas with a recommendation that disciplinary proceedings be commenced against Berleth.[159]

Judge Isgur's referral was assigned to Judge Hanks to determine whether further disciplinary proceedings should be held.[160] Following review of Judge Isgur's opinion and a response submitted by Berleth, Judge Hanks concluded that disciplinary proceedings were warranted.[161] Judge Hanks noted that, based on the record in the bankruptcy court, "18 U.S.C. § 3057 obligated Judge Isgur to refer Berleth's actions to the United States Attorney," and "a matter serious enough to warrant a criminal referral would also be serious enough to warrant referral [for] disciplinary

---

[158]Id. at 19.

[159]Id.

[160]See L.R. Appendix A Rule 5.B ("Upon receipt of a charge that is not frivolous, the chief judge shall order the clerk to file the charge and randomly assign it to a district judge for review to determine whether further disciplinary proceedings should be held.").

[161]Preliminary Report, Docket Entry No. 6; see L.R. Appendix A Rule 5.C ("After review, the judge will, by written report, recommend to the chief judge whether further disciplinary proceedings should be heard and the charges to be heard.").

proceedings."[162] Because factual assertions in Berleth's response were "directly contradicted by the record developed thus far in this case," Judge Hanks determined that further proceedings were "necessary to resolve key factual disputes."[163]

Neither Judge Isgur nor Judge Hanks applied a preponderance of the evidence standard or analyzed Berleth's conduct within the framework of the Southern District Rules of Discipline — nor did either judge have the benefit of a full evidentiary hearing. The court will therefore conduct an independent analysis of the record as it now exists in light of the current posture of the case.

## C.  Analysis

Berleth is charged with violating the Southern District Rules of Discipline by offering case referrals to an opposing lawyer to induce that lawyer to reduce his settlement demand in a bankruptcy adversary proceeding in violation of 18 U.S.C. § 152(6).[164] As discussed above, the "minimum standard of practice" under the Southern District Rules of Discipline is the Texas Disciplinary Rules, and a violation of the Texas Disciplinary Rules "shall be grounds for disciplinary action."[165] However, "the court is not

---

[162]Preliminary Report, Docket Entry No. 6, p. 5.

[163]Id. at 4-5.

[164]Order, Docket Entry No. 9, p. 2.

[165]L.R. Appendix A Rule 1.B.

-45-

limited by that code."[166]  The court looks first to the Texas Disciplinary Rules to determine if Berleth's conduct violated those rules.  The court then looks at the Local Rules to determine whether Berleth otherwise violated the Guidelines for Professional Conduct for attorneys practicing in this district.

### 1.  Violation of the Texas Disciplinary Rules

Texas Disciplinary Rule 8.04 (Misconduct) contains at least two provisions that are relevant in this case:

Rule 8.04(a)(2) states that a lawyer shall not "commit a serious crime," defined to include "a felony involving moral turpitude," or "commit any other criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

Rule 8.04(a)(3) specifies that a lawyer shall not "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

Conduct that could violate a federal criminal statute, such as 18 U.S.C. § 152(6), implicates both rules, whether or not the attorney is charged with or convicted of a crime.[167]  As noted in the

---

[166]Id.

[167]See Tex. R. Disc. P. 8.01.  Violation of any of the Texas Disciplinary Rules constitutes "professional misconduct" under the Texas Rules of Disciplinary Procedure.  Tex. R. Disc. P. 1.06 – Definitions CC.1.  Separately, "professional misconduct" includes "conviction of a serious crime" and "conviction of an intentional crime."  Tex. R. Disc. P. 1.06 – Definitions CC.7, CC.8.  Where an attorney has been convicted of an "intentional crime," the Texas Rules of Disciplinary Procedure provide for "compulsory discipline" under Part VIII.  However, "[p]roceedings under this part are not
(continued...)

Texas Rules of Disciplinary Procedure, "an attorney may be disciplined as a result of the underlying facts as well as being disciplined upon the conviction [of a crime]."[168]

In determining whether Berleth violated the Texas Disciplinary Rules, the court will first determine whether there was a violation of 18 U.S.C. § 152(6), and therefore Rule 8.04(a)(2), then, more generally, whether Berleth's conduct violated Rule 8.04(a)(3).

### a. Whether Berleth Violated Rule 8.04(a)(2)

In his initial referral Judge Isgur found reasonable grounds to believe that Berleth violated 18 U.S.C. § 152(6), which states:

> A person who . . . knowingly and fraudulently gives, offers, receives, or attempts to obtain any money or property, remuneration, compensation, reward, advantage, or promise thereof for acting or forbearing to act in any case under title 11; . . . shall be fined under this title, imprisoned not more than 5 years, or both.

An offense under § 152(6), as applicable here, requires proof of the following elements:

(1)  There existed a proceeding in bankruptcy; and

(2)  The defendant

— offered money, property, remuneration, compensation, reward, advantage, or promise thereof

— for acting or failing to act in such bankruptcy proceeding; and

---

[167](...continued)
exclusive in that an attorney may be disciplined as a result of the underlying facts as well as being disciplined upon the conviction or probation through deferred adjudication." Tex. R. Disc. P. 8.01.

[168]Tex. R. Disc. P. 8.01.

(3)    The defendant did so knowingly and fraudulently.[169]

The word "knowingly" means that "the act was done voluntarily and intentionally, not because of mistake or accident."[170]  "An act is done fraudulently if done with intent to deceive or cheat any creditor, trustee, or bankruptcy judge."[171]

### (i)    Undisputed Elements

There is no dispute as to the first element.  Cavness filed for bankruptcy twice, his dispute with Synergy related to those bankruptcy filings, and the adversary proceeding against Synergy was based, at least in part, on alleged violations of title 11.[172]

There is no dispute as to the first part of the second element.  As Berleth stated at the disciplinary hearing:

> . . . I think that all of the parties, Chuck Newton and everybody, are in agreement with, you know, who said what on what day.  The question is about the intent of those statements. . . . there is no real factual disputes about them.[173]

---

[169]See Fifth Circuit Pattern Jury Instruction (Criminal) § 2.08A, 2.08B (listing elements of violations of 18 U.S.C. §§ 1, 4); Seventh Circuit Pattern Jury Instructions, 18 U.S.C. § 152(6).

[170]Fifth Circuit Pattern Jury Instruction (Criminal) § 1.37 (citing United States v. Aggrawal, 17 F.3d 737, 744 (5th Cir. 1994)).

[171]Fifth Circuit Pattern Jury Instruction (Criminal) § 2.08A; see also id. note ("The definition[] of . . . 'fraudulently' may also apply to prosecution under the other paragraphs of § 152.").

[172]Case No. C-18-BK-20275 (Cavness BK1); Case No. C-18-BK-20425 (Cavness BK2); Cavness Adversary Complaint, Case No. C-19-AP-2012 (Cavness AP), Docket Entry No. 1, p. 1; id. ¶¶ 64-75.

[173]Transcript of January 14, 2020, Disciplinary Hearing, Docket Entry No. 14, p. 46.

Specifically, it is undisputed that at the January 14, 2019, meeting Berleth told Newton that (1) Synergy files 50 bankruptcy cases a month, at least some of which are in the state of Texas; and (2) Synergy could refer automatic stay and discharge injunction work from those cases to Newton's law firm.[174]

### (ii) Disputed Elements

There is, however, some dispute as to the remaining elements, specifically, whether Berleth's offer was intended to induce action or inaction on Newton's part, and whether Berleth acted knowingly and fraudulently.

### (a) Offer for Acting or Failing to Act in a Bankruptcy Proceeding

Newton alleges that Berleth's offer was an explicit quid pro quo:

> [Berleth stated that] if counsel would agree to no longer pursue Mr. Cavness' matter that Synergy would refer all of its automatic stay and discharge injunction work in Texas to Charles Newton & Associates, which could be, in Mr. Berleth's view, substantial.[175]

Newton never retracted that allegation, although he did expand on it when questioned by Judge Isgur:

---

[174]Cavness Objection, Case No. H-19-MP-302 (Synergy), Docket Entry No. 6, ¶ 40; Berleth Deposition, Case No. H-19-MP-302 (Synergy), Docket Entry No. 27A, pp. 14-15,17; Joint Response to Show Cause Order, Case No. H-19-MP-302 (Synergy), Docket Entry No. 25, ¶¶ 8-13.

[175]Cavness Objection, Case No. H-19-MP-302 (Synergy), Docket Entry No. 6, ¶ 40.

> [W]e had a lengthy conversation, and part of it began in this restaurant and proceeded out into the parking lot when we left, and the issue arose twice during that time. The last time was in the parking lot, and we told Mr. Berleth that we would not accept that offer. The first time it was broached I told Mr. Berleth that I was here to discuss my client and not my relationship or my business – pardon me – the law firm's business with any client. And I had thought that that would push the subject off. It didn't. It continued.[176]

Berleth stated in his deposition and his Preliminary Response to Judge Hanks that "there was no quid pro quo,"[177] and he "denies that [the offer] was made with any intent or at a point in the conversation to persuade [Newton's] action or inaction."[178] Specifically, Berleth contends that his offer to refer cases to Newton "had nothing to do with the current bankruptcies and nothing to do with Mr. Cavness,"[179] that it was merely "a casual comment . . . indicating some appropriate business referrals,"[180] made in "a completely separate conversation,"[181] after Berleth and Newton "had already said everything [they] were going to say about Synergy and

------

[176]Transcript of Hearing Re: Injunction and Order of Suspension, Case No. H-19-MP-302 (Synergy), Docket Entry No. 14, pp. 17-18.

[177]Berleth Deposition, Case No. 19-MP-302 (Synergy), Docket Entry No. 27A, p. 16.

[178]Respondent's Preliminary Statement, Docket Entry No. 5, p. 1.

[179]Berleth Deposition, Case No. 19-MP-302 (Synergy), Docket Entry No. 27A, p. 16.

[180]Respondent's Preliminary Statement, Docket Entry No. 5, p. 1.

[181]Berleth Deposition, Case No. 19-MP-302 (Synergy), Docket Entry No. 27A, p. 64.

Cavness."[182]  In short, "[i]t was a post-settlement conversation that was general, non-specific and in the nature of networking, as is customary within the legal community."[183]

Berleth's denials are not persuasive for a number of reasons, and the credible evidence supports a finding that Berleth offered to refer cases to Newton to induce Newton to lower his settlement demand, i.e., to induce Newton's action and/or inaction in connection with the Cavness adversary proceeding.

First, Berleth's statements in his deposition and Preliminary Response are directly contradicted by the Joint Agreed Response he filed in the bankruptcy court.[184]  The Joint Agreed Response links Berleth's offer in both timing and purpose with his attempt to convince Newton to lower his settlement demand.  Specifically, while Berleth argues that the offer was part of a "completely separate"[185] "post-settlement conversation,"[186] the Joint Agreed Response states that the offer was "part of a trial balloon of sorts to get negotiations started toward an agreement to settle the

---

[182]Id. at 22.

[183]Respondent's Preliminary Statement, Docket Entry No. 5, p. 1.

[184]Joint Agreed Response to Show Cause Order, Case No. H-19-MP-302 (Synergy), Docket Entry No. 25.

[185]Berleth Deposition, Case No. 19-MP-302 (Synergy), Docket Entry No. 27A, p. 64.

[186]Respondent's Preliminary Statement, Docket Entry No. 5, p. 1.

Cavness case for an amount of less than $15,000."[187]  Similarly, while Berleth argues that the offer "had nothing to do with Mr. Cavness,"[188] the Joint Agreed Response states that "the goal" of the offer was "to make Cavness more amenable to accepting less than the $15,000.00 made the subject of the Proposed Settlement."[189]

Second, it makes sense that Berleth would try to find an alternative way to satisfy Newton.  According to Berleth, Newton's attorneys' fees were the sticking point in negotiations:  "Chuck Newton was doing the negotiating for himself, not for Mr. Cavness, because the $10,000 settlement that I offered would have made his client whole."[190]  In Berleth's view, Newton "was asking for, quite frankly, way too much for what he had done, and compared to some of the other settlements, he was off the charts way too much."[191]  As such, offering to refer cases to Newton in exchange for a lower settlement amount would have been a logical, albeit improper, negotiating tactic.

Third, while Berleth asserts that "Mr. Newton has stated on the record that he supports [Berleth's] interpretation, and that he

_____

[187]Joint Agreed Response to Show Cause Order, Case No. H-19-MP-302 (Synergy), Docket Entry No. 25, ¶ 9.

[188]Berleth Deposition, Case No. 19-MP-302 (Synergy), Docket Entry No. 27A, p. 16.

[189]Joint Agreed Response to Show Cause Order, Case No. H-19-MP-302 (Synergy), Docket Entry No. 25, ¶ 17.c.

[190]Berleth Deposition, Case No. 19-MP-302 (Synergy), Docket Entry No. 27A, p. 26.

[191]Id. at 75.

believes no further action should be taken,"[192] the record does not support these assertions. When questioned by Judge Isgur, Newton confirmed that the allegations in the Cavness Objection were truthful, that Berleth in fact made the offer twice during the January 14 lunch meeting, and that Newton told Berleth that Newton was there to discuss his client, not his firm's business.[193] Newton agreed with Judge Isgur that, in offering to refer cases to Newton, Berleth was "trying to persuade [Newton] to back off."[194] As to these factual allegations, Newton did not waiver: "I stick with what I told the court."[195]

Furthermore, although Newton was concerned that a criminal referral might "get out of hand," he nonetheless felt that Berleth made some "egregious errors," and "there has to be some statement made."[196] "If you want to sanction him, if you want to make him go further than what you have, I think that's appropriate. I think what happened happened."[197]

For all of these reasons, the court finds that the second element of § 152(6) is satisfied by a preponderance of the

---

[192]Id.

[193]Transcript of Hearing Re: Injunction and Order of Suspension, Case No. H-19-MP-302 (Synergy), Docket Entry No. 14, p. 17.

[194]Transcript of May 23, 2019 Hearing on Order to Show Cause, Case No. H-19-MP-302 (Synergy), Docket Entry No. 27, p. 33.

[195]Id. at 30.

[196]Id.

[197]Id. at 32.

evidence: Berleth offered to refer cases to Newton in an attempt to persuade Newton to reduce his settlement demand in a bankruptcy adversary proceeding.

(b) <u>Acting Knowingly and Fraudulently</u>

There is no genuine dispute that Berleth acted knowingly, i.e., "voluntarily and intentionally, not because of mistake or accident."[198] To the extent Berleth argues that he did not act knowingly because his offer was not linked to Newton reducing his settlement demand, the credible evidence is to the contrary, as discussed above. Similarly, Berleth's argument that he was unaware of § 152(6) when he made the offer to Newton is irrelevant: knowledge of illegality is not an element of § 152(6).[199]

Whether Berleth acted fraudulently, i.e., whether he made the offer to Newton "with intent to deceive or cheat any creditor, trustee, or bankruptcy judge,"[200] is a closer question. There is little direct evidence in the record on which to make that determination. Deceptive intent was not addressed in Berleth's deposition or the Joint Agreed Response, and Berleth's position in his Preliminary Response and at the January 14, 2020, disciplinary

_____

[198]Fifth Circuit Pattern Jury Instruction (Criminal) § 1.37 (citing <u>United States v. Aggrawal,</u> 17 F.3d 737, 744 (5th Cir. 1994)).

[199]<u>United States v. Zehrbach,</u> 47 F.3d 1252, 1262 (3d Cir. 1995).

[200]Fifth Circuit Pattern Jury Instruction (Criminal) § 2.08A; <u>see also id.</u> note ("The definition[] of . . . 'fraudulently' may also apply to prosecution under the other paragraphs of § 152.").

hearing was simply that "there was no intent to bribe [Newton] in any way."[201]

Nevertheless, as addressed by the special prosecutor at the January 14 hearing, there is evidence in the record to suggest that had Newton accepted Berleth's offer and case referrals had become part of the settlement consideration, finalizing the settlement could have involved misrepresentations to the bankruptcy court.[202] As Newton advised the court when he first proposed an adversary proceeding against Synergy, "[s]hould a settlement or resolution result without the need to file an adversary proceeding, Mr. Cavness will file and circulate a motion for approval pursuant to F.R. Bankr. P. 9019."[203] Such a motion would require the parties to make a number of representations to the court, chief among them that the settlement was an arms-length transaction not tainted by fraud.[204] When the Cavness dispute was ultimately settled without

---

[201]Respondent's Preliminary Statement, Docket Entry No. 5, p. 1; Transcript of January 14, 2020, Disciplinary Hearing, Docket Entry No. 14, p. 62.

[202]See Transcript of January 14, 2020 Disciplinary Hearing, Docket Entry No. 14, pp. 42-45, 53-54.

[203]Status Report, Case No. C-18-BK-20425 (Cavness BK2), ¶ 16. Rule 9019(a) states: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct."

[204]Before approving a settlement under Rule 9019, a bankruptcy court must be satisfied that the settlement is "fair and equitable and in the best interest of the estate." Matter of Foster Mortg. Corp., 68 F.3d 914, 917 (5th Cir. 1995). "To assure a proper (continued...)

Berleth's involvement, Newton submitted a motion stating just that: "Mr. Cavness contends that the parties have engaged in arms-length negotiations and that the settlement agreement reached is an arms-length settlement."[205]

The court recognizes that this possible result is speculative. There is no evidence that Berleth was aware of Rule 9019's requirements or that he knew settlement of the Cavness dispute would involve any factual representations to the bankruptcy court. Nevertheless, as discussed in Judge Isgur's opinion referring this case, Berleth's lack of candor before the bankruptcy court and his inconsistent statements regarding the allegations against him are indicative of "dishonest character."[206] They provide circumstantial evidence of fraudulent intent. But after applying a preponderance of the evidence standard to the strict elements of § 152(6), the court does not find that the third element of § 152(6) is satisfied. There is not sufficient evidence to establish that

---

[204](...continued)
compromise the bankruptcy judge, must be apprised of all the necessary facts for an intelligent, objective and educated evaluation." Matter of Jackson Brewing Co., 624 F.2d 599, 602 (5th Cir. 1980). Specifically, the bankruptcy court must consider a number of factors, including the extent to which the settlement "is the product of arms-length bargaining, and not of fraud or collusion." Matter of Foster Mortg. Corp., 68 F.3d at 917-18.

[205]First Amended Motion to Compromise Controversy Pursuant to FRBP 9019, Case No. C-18-BK-20425 (Cavness BK2), Docket Entry No. 85, ¶ 23.

[206]Memorandum Opinion and Order, Docket Entry No. 1, pp. 17-18.

Berleth offered cases to Newton with the intent to deceive a creditor, trustee, or bankruptcy judge. Based on the record before it, the court therefore finds that the evidence is not sufficient to prove a violation of § 152(6) or a violation of Texas Disciplinary Rule 8.04(a)(2).

(c) <u>Whether Berleth violated Rule 8.04(a)(3)</u>

Unlike Rule 8.04(a)(2), which requires proof of a crime, Rule 8.04(a)(3) sweeps more broadly — it prohibits any conduct "involving dishonesty, fraud, deceit or misrepresentation." The Texas Disciplinary Rules define "fraud" as "conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information."[207] The terms "dishonesty," "deceit," and "misrepresentation" are not defined in the Rules, but they have similar and overlapping dictionary definitions: demonstrating a lack of honesty or integrity, causing someone to accept as true or valid what is false or invalid, and giving false or misleading representations.[208]

Violation of Rule 8.04(a)(3) requires proof of fraudulent intent or an intent to deceive. As discussed above, there is no direct evidence that Berleth intended to deceive the bankruptcy court. While it could be argued that Berleth intended to deceive

---

[207]Tex. Disciplinary R. Prof. Conduct, Terminology.

[208]"Dishonesty," "Deceit," and "Misrepresent," The Merriam-Webster.com Dictionary, <u>available at https://www.merriam-webster.com/dictionary/misrepresentation.</u> Accessed 27 January 2020.

Cavness by insisting on terms that would benefit Synergy and Newton at Cavness's expense, the evidence in the record suggests that any reduction in the settlement demand would have come from Newton's attorneys' fees, not Cavness's recovery. Berleth stated that his reduced settlement offer would make Cavness whole, but "Newton was doing the negotiating for himself, not for Mr. Cavness."[209] The evidence therefore does not establish that Berleth sought to deceive or disadvantage Cavness by offering to refer cases to Newton.

It is true that even apart from his interactions with Newton, Berleth demonstrated a lack of candor before the bankruptcy court, and that the positions he took in his deposition were inconsistent with his statements in the Joint Agreed Response. Nevertheless, having carefully considered all of the evidence, the court concludes that there is insufficient evidence of dishonesty, fraud, deceit, or misrepresentation to prove a violation of Texas Disciplinary Rule 8.04(a)(3).

> 2.    <u>Violation of the Southern District of Texas Guidelines for Professional Conduct</u>

The Southern District of Texas Guidelines for Professional Conduct states, <u>inter alia</u>:

> A.    In fulfilling his or her primary duty to the client, a lawyer must be ever conscious of the broader duty to the judicial system that serves both attorney and client.

---

[209]Berleth Deposition, Case No. H-19-MP-302, Docket Entry No. 27A, p. 26.

> B. A lawyer owes, to the judiciary, candor, diligence and utmost respect.
>
> . . .
>
> D. A lawyer unquestionably owes, to the administration of justice, the fundamental duties of personal dignity and professional integrity.[210]

The court concludes that Berleth violated these Guidelines for Professional Conduct. Berleth owed a duty of candor to the judiciary. His deposition testimony, which is inconsistent with the stipulation in the Joint Agreed Response to Show Cause Order, reflects a lack of candor before Judge Isgur in violation of Guidelines A, B, and D.

In addition, Berleth's attempts to renegotiate the settlement amount to be paid to Cavness by offering to refer cases to Newton if he would reduce the $15,000 settlement evidenced a lack of professional integrity. Even if Berleth's settlement proposal had only resulted in an agreement by Newton to reduce his attorneys' fees, with no reduction in the damages to be received by Cavness, the submission of such an agreement to Judge Isgur for approval could have been a breach of Berleth's duty to the judicial system in violation of Guideline A, a breach of his duty of candor to the judiciary in violation of Guideline B, and a breach of his duty to the administration of justice and personal integrity in violation of Guideline D. The fact that Berleth's proposal did not bear fruit does not absolve him.

---

[210]L.R. Appendix D ¶¶ A, B, D.

### 3.    Factors to be Considered in Imposing Sanctions

Rule 5.F. of the Southern District Rules of Discipline states that if the hearing judge determines that disciplinary action should be taken, the judge shall (1) make findings of violations, and (2) order either (A) permanent disbarment, (B) a suspension, or (C) a written or oral reprimand and whether such should be public or private, with such conditions as the judge may order.

While the Southern District Rules of Discipline do not identify factors to be considered, Rule 15.02 of the Texas Rules of Disciplinary Procedure states that, "[i]n imposing a sanction after a finding of Professional Misconduct, the disciplinary tribunal should consider the following factors:

> (a)    the duty violated;
>
> (b)    the Respondent's level of culpability;
>
> (c)    the potential or actual injury caused by the Respondent's misconduct; and
>
> (d)    the existence of aggravating or mitigating factors."[211]

"After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose."  Specific aggravating and mitigating factors are identified in sections 15.09(B) and (C).

Addressing factors (a) and (b), the court finds that Berleth knowingly violated three of the court's Guidelines for Professional

---

[211]Tex. R. Disc. P. 15.02.

Conduct. As to factor (c), although Newton did not accede to Berleth's offer to accept legal services in return for lowering his settlement demand, the offer had the potential to practice a fraud on the bankruptcy court if a settlement had been renegotiated as suggested by Berleth and presented to the bankruptcy court for approval without the court's knowledge of the true facts of the negotiations between Berleth and Newton.

Factor (d) requires the court to consider aggravating or mitigating factors. Other than the sanctions previously imposed on Berleth by Judge Isgur, Berleth has no disciplinary record.[212] The only relevant aggravating factor the court has identified is Berleth's initial "refusal to acknowledge [the] wrongful nature of his conduct"[213] before Judge Isgur. Relevant mitigating factors are "his inexperience in the practice of law,"[214] the imposition of sanctions already imposed by Judge Isgur,[215] and the remorse and contrition Berleth expressed to the court.[216]

This is a troubling case. An inexperienced lawyer violated several Guidelines for Professional Conduct, and his conduct could have resulted in much more serious violations had the court found

---

[212]*Id.* Rules 15.09.B.2.(a) and C.2.(a).

[213]*Id.* Rule 15.09.B.2.(g).

[214]*Id.* Rule 15.09.C.2.(f).

[215]*Id.* Rule 15.09.C.2.(k).

[216]*Id.* Rule 15.09.C.2.(l).

fraudulent intent. Having considered all of the relevant factors, the court concludes that Berleth should be privately reprimanded. A private reprimand is not a viable remedy, however, because the records in the underlying bankruptcy cases and in this action, which will include the court's Memorandum Opinion and Order, are publicly available. The court's Memorandum Opinion and Order will serve as a reprimand since the court has reproved Berleth for his conduct. No further sanction is necessary. The court cautions Berleth, however, to give careful attention to all of the ethical standards that govern his conduct as an attorney admitted to practice before the court and to guard against any violations of those standards.

Pursuant to Rule 5.F., the clerk of court will provide a copy of this Memorandum Opinion and Order to Robert W. Berleth and to Chief Judge Lee H. Rosenthal. The clerk will also provide copies to Judge George C. Hanks, Jr. and Judge Marvin P. Isgur.

**SIGNED** at Houston, Texas, on this 31st day of January, 2020.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE